UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WILLIAM PURNELL,                     )
                                     )
             Plaintiff,              )
                                     )
        v.                           )        No. 1:22-cv-02426-SEB-MJD
                                     )
LONG ELECTRIC COMPANY, INC.,         )
                                     )
             Defendant.              )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING BACK AND FRONT PAY**

This matter is before the Court following a jury trial on Plaintiff William Purnell's 42 U.S.C. § 1981 employment discrimination claim against Defendant Long Electric Company which resulted in the jury's verdict in favor of Mr. Purnell on the liability issues for which it awarded $22,000.00 in compensatory damages. Prior to submitting the case to the jury for deliberation, the Court informed the parties (outside the presence of the jury) that the issues related to the equitable remedies of back pay and/or front pay would be left for decision following the return of the jury verdict on liability and compensatory damages. Neither party objected to the Court's deferral of those issues. Having heard and considered the testimony and other evidence relating to lost wages, the Court now resolves the issues relating to Plaintiff's back pay and front pay claims as set forth in the following findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52.

1

## I.     Findings of Fact

1. Mr. Purnell's work as an electrician employed by Long Electric and assigned to the McNutt residence hall and dining facility on the campus of Indiana University in Bloomington, Indiana (the "McNutt Project") began on March 9, 2021, and he was laid off on March 25, 2021.  His entire tenure extended over a mere sixteen days.

2. At all times relevant to this litigation, Mr. Purnell was classified as a "Book 1" electrician with the IBEW 725 Union (the "Union"), which granted him priority in Union job placements over traveling and retired electricians.

3. Following his layoff by Long Electric, Mr. Purnell returned immediately to the Union Hall and signed up on the Union's out-of-work list, making him eligible to receive future work assignments.

4. Mr. Purnell did not apply for unemployment compensation benefits at any time following his layoff.

5. Beginning on April 7, 2021, Mr. Purnell called the Union Hall every two to three days each week to check on the availability of work and was told there was no available work.

6. Mr. Purnell did not accept any electrician positions, Union or otherwise, from the date of his layoff, March 25, 2021, until July 2022, a period of approximately sixteen months.

7. Mr. Purnell performed no other type of paid work during the sixteen month period between March 25, 2021 and July 2022.

8.  While employed with Long Electric, Mr. Purnell made $37.98 per hour and worked approximately 40 hours per week.  He calculated, based on these numbers and the time that he was out of work following his layoff, that he is owed approximately $105,000.00 in lost wages from Long Electric.

9.  At the time Mr. Purnell was laid off, Long Electric had a standing "open call" to the Union for the McNutt Project to secure electricians.

10. In addition to the "open call," between March 2021 and May 2022, Long Electric placed additional calls to the Union for electricians to complete the work on the McNutt Project.

11. Apart from the McNutt Project, Long Electric also had other electrical jobs on or around the Indiana University campus for which it placed calls to the Union for electricians between March 2021 and July 2022.

12. Long Electric President Jeff Chlystun testified that the company would have accepted Mr. Purnell back as an electrician after he was laid off from the McNutt Project, if Mr. Purnell had accepted a Union call made by Long Electric.

13. By mid-May 2021, at least two other Book 1 Union electricians, namely, Ryan Bland and Marc Duncan, who left Long Electric's employ after Mr. Purnell's departure, and therefore had lower priority than Mr. Purnell on the Union's out-of-work list of available electricians, each accepted calls to the Union for work at companies other than Long Electric, suggesting that other Union jobs were available to Union members who sought to be rehired.

14. In June 2021, Long Electric rehired traveling "Book 2" electrician, Bob Koffer, to

    return to work on the McNutt Project.  Given his Book 2 designation, Mr. Koffer,

    who had been laid off the day after Mr. Purnell's departure, could not have

    accepted Long Electric's call unless all Book 1 electricians on the out-of-work list,

    including Mr. Purnell, had first passed by the hiring opportunity.

15. In the aftermath of his layoff, Mr. Purnell verbally threatened his supervisors at

    Long Electric in two separate incidents occurring on March 25 and 26, 2021,

    respectively.  Under Long Electric's Safety Rules and Regulations, such conduct

    can be a basis for a for-cause termination.

## II.    Conclusions of Law

### A.  Back Pay

The purpose of back pay is to put the plaintiff in the same position he would have been if the discrimination had not occurred, *see Harper v. Godfrey, Co.*, 45 F.3d 143, 149 (7th Cir. 1995), and it "extends from the date of the adverse employment action until the date of judgment."  *Thomas v. Shoshone Trucking, LLC*, No. 4:20-cv-00209-TWP-DML, 2022 WL 16539471, at *3 (S.D. Ind. Oct. 28, 2022) (citing *Ortega v. Chi. Bd. of Ed.*, 280 F. Supp. 3d 1072, 1099 (N.D. Ill. 2017); *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1369 (7th Cir. 1992)).  In § 1981 cases such as this, "back pay is assumed to be appropriate in order to make the plaintiff whole."  *Woods v. Von Maur, Inc.*, No. 09 C 7800, 2011 WL 6945763, at *1 (N.D. Ill. Dec. 12, 2011) (citation omitted).

Back pay includes "any lost wages and benefits [the plaintiff] would have received from the Defendant if he had not been [laid off], minus the earnings and benefits that

4

Plaintiff received from other employment during that time that he would not otherwise

have received."  Seventh Circuit Pattern Civil Jury Instruction 3.11 (2017 rev.).  In some

circumstances, back pay damages may be limited by subsequent events, if, for example,

the plaintiff secures a higher paying job, voluntarily removes himself from the workforce,

is reinstated, or some other circumstance limits the amount of time the plaintiff could

have worked following the discriminatory act.  *Id.* Cmt. b.  The plaintiff has the burden to

prove the lost wages and benefits and their amount and, if the plaintiff fails to do so for

any time period, damages may not be awarded.  *Id.* Cmt. c.

"Once a plaintiff has established the amount of damages []he claims resulted from

h[is] employer's conduct, the burden of going forward shifts to the defendant to show that

the plaintiff failed to mitigate damages or that damages were in fact less than the plaintiff

asserts."  *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir.

1994) (citation omitted).  To show a failure to mitigate damages, the defendant must

establish that: "(1) the plaintiff failed to exercise reasonable diligence to mitigate her

damages, and (2) there was a reasonable likelihood that the plaintiff might have found

comparable work by exercising reasonable diligence."  *Id.* (citation omitted).

Here, Mr. Purnell seeks back pay from March 29, 2021 (which would have been

his next work day had he not been laid off), to May 31, 2022 (the date work on which the

McNutt Project ended(a total of one year, 62 days)).  In support of this request, Mr.

Purnell testified to his hourly pay rate and the approximate number of hours he worked

each week throughout his tenure with Long Electric.  He supplemented his trial testimony

with a supporting affidavit and pay stubs as well as an illustrative chart of lost wages.[1]

Based on this information, Mr. Purnell estimates that his lost earnings following his

layoff totaled approximately $105,000.  Thus, he seeks an award of $104,476.86 in back

pay.

The evidence adduced by Long Electric at trial, however, established that, for

much of the time for which he seeks back pay, Mr. Purnell entirely failed to take any

appropriate steps to mitigate his damages, and that, had he exercised reasonable diligence

in seeking other Union work following his layoff, he likely would have found comparable

employment much sooner than he did.[2]  At trial, Mr. Purnell testified that, at the time he

was laid off, electrical work was scarce due to the COVID pandemic, and that, although

he returned to the Union Hall the day after his layoff to place his name on the out-of-

work list, he was unable to secure employment until July 2022.  In his post-trial affidavit,

he further avers that, beginning on April 7, 2021, he called into the Union two to three

times a week and was consistently told there was no work available.

---

[1] To the extent that Long Electric objects to Mr. Purnell's supplementation of the record on lost wages, that objection is hereby <u>OVERRULED</u> as the Court expressly permitted the parties to supplement the record on this issue, and, in any event, we see no prejudice to Long Electric as our reliance on Mr. Purnell's supplemental submissions in reaching our decision on equitable remedies is minimal and not outcome determinative.

[2] Insofar as Long Electric argues that Mr. Purnell is not entitled to *any* back pay due to subsequent events because had he not been laid off on March 25, 2021, he would have been terminated for cause the next day for his threatening behavior on March 25 and March 26, 2021, we reject that argument.  At best, Long Electric established that, under its employment policies, it *could* have terminated Mr. Purnell for cause based on his threats, not that it *would* have.  In the absence of any evidence that Long Electric had ever previously fired employees for similar offenses, the existence of the policy alone is not sufficient to prove that it actually would have been applied, particularly given Mr. Chlystun's testimony that, had the Union referred Mr. Purnell for a job following his layoff, Long Electric would have hired him back.

However, every other witness who was questioned at trial regarding the availability of Union work following Mr. Purnell's layoff testified credibly that there *was* in fact electrical work available in the spring and fall of 2021. Union representative Todd Thacker, for example, testified that there were several calls for electricians in the spring and fall of 2021 and that, although it varied depending on the individual, an electrician should have been able to get work within a few months during that time period. Marc Duncan and Ryan Bland, who, like Mr. Purnell, were Book 1 Union members on the McNutt Project, testified that by mid-May 2021 (approximately 7 weeks after Mr. Purnell's layoff), they each left Long Electric's employ to accept calls through the Union from other companies seeking electricians. Likewise, by June 2021, Long Electric had hired back Book 2 employee, Bob Koffer, to perform electrical work on one of its projects. The evidence further establishes that, due to Mr. Purnell's Book 1 status and the length of time he had been out of work, he would have had priority over any of these three electricians had he responded to these same Union calls. In addition, we note again that Mr. Chlystun testified that had the Union referred Mr. Purnell for a job following his layoff, Long Electric would have hired him.

For these reasons, we find that, with reasonable diligence, Mr. Purnell should have been able to find comparable work within approximately seven weeks of his March 25, 2021 layoff. Although Mr. Purnell placed his name on the out-of-work list the day following his layoff, he concedes that he did not begin contacting the Union to seek comparable work until April 7, 2021, approximately two weeks after his layoff. Accordingly, we will award Mr. Purnell five weeks of back pay at his hourly rate of

$37.98.  Although Mr. Purnell testified that he was expected to work approximately 40

hours per week, his pay stubs show that the most he worked at any point during his tenure

with Long Electric was 35 hours per pay period.  Accordingly, Mr. Purnell has proved

that he is entitled to an equitable back pay award of $6,646.50 ($37.98 per hour x 35

hours per week x 5 weeks).

### B.  Front Pay

The "purpose of front pay is to compensate successful plaintiffs for 'the post-

judgment effects of past discrimination[.]'" *E.E.O.C. v. Century Broadcasting Corp.*, 957

F.2d 1446 (7th Cir. 1992) (quoting *Shore v. Fed. Express Corp.*, 777 F.2d 1155, 1158 (6th

Cir. 1985)).  To the extent that Mr. Purnell seeks an award of front pay,[3] he has failed to

demonstrate his entitlement to such an award as he has presented no evidence that he

would have been employed with Long Electric past May 2022 or that he will suffer any

other post-judgment damage caused by Long Electric's unlawful conduct, such as

decreased earning capacity.  To the contrary, the undisputed evidence establishes that,

following his layoff and prior to trial, Mr. Purnell was able to secure a higher paying

position.  Accordingly, we hold that Mr. Purnell is not entitled to an award of front pay.

---

[3] It is not clear whether Mr. Purnell seeks front pay as no such request was included in his
complaint and his submissions in support of an equitable award reference only "lost wages"
without distinguishing between back pay and front pay.  However, in an exercise of caution, we
have addressed the issue of front pay only to clarify that Mr. Purnell has not shown an
entitlement to such an award.

### III.    Conclusion

For the reasons outlined above, the Court rules that, in addition to the $22,000.00 in compensatory damages awarded by the jury, Plaintiff is entitled to an equitable award of $6,646.50 in back pay.[4]

Plaintiff's request for attorney fees and costs remains pending before the Court. Once the Court issues a ruling on that motion, final judgment will be entered.

IT IS SO ORDERED.


Date _____5/29/2025_____              _____Sarah Evans Barker_____
                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

---

[4] The decision to award interest on a back pay award is a matter within the district court's discretion, but it is presumptively available for violations of federal law. *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 646 (7th Cir. 2016). Here, however, Plaintiff neither requested nor put forth any argument regarding prejudgment interest; accordingly, we have made no such award.

Distribution:

Amber K. Boyd
Amber Boyd Attorney at Law
amber@amberboydlaw.com

Robin C. Clay
CURLIN & CLAY LAW
rclay@curlinclaylaw.com

Jaclyn Michelle Flint
RILEY BENNETT EGLOFF LLP
jflint@rbelaw.com

Stephen Rollins, II
Amber Boyd Law
stephen@amberboydlaw.com

Donald S. Smith
RILEY BENNETT EGLOFF LLP
dsmith@rbelaw.com

Gregory A. Stowers
Stowers Legal
gstowers@stowersandweddle.com

Lauren M. Thompson
Amber K. Boyd Attorney at Law
lauren@amberboydlaw.com